United States District Court
Southern District of Texas
**ENTERED**
August 28, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-17-567-1 |
| | § | |
| RONALD DONNELL BROWN, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant Ronald Donnell Brown's Opposed Motion to Modify Protective Order and to Grant Client Access to His File ("Brown's Motion to Modify Protective Order") (Docket Entry No. 575). Also pending are the United States' Response to Defendant's Motion to Modify Protective Order ("United States' Response") (Docket Entry No. 583), and Brown's Reply to Government Response to Brown's Motion to Modify Protective Order ("Brown's Reply")(Docket Entry No. 587). For the reasons stated below, Brown's Motion to Modify Protective Order will be denied.

## I. Background

In September of 2017 Brown was charged in a seven-count Indictment (Docket Entry No. 1) with offenses committed in his role as head of a drug trafficking organization, including the murder-for-hire of Marcus Celestine ("Celestine") and the kidnapping of Eric Williams ("Williams"). In May of 2018 the court entered a Protective Order (Docket Entry No. 106) stating in pertinent part:

> IT IS HEREBY ORDERED that discoverable material in connection with this case previously made available and to be made available in the future to Defendant Ronald D. Brown by the United States, not be discussed with anyone other than Defendant Ronald D. Brown and his counsel, or the staff of his counsel (full or part-time assistants, investigators and attorneys formally associated with the law firm), except upon the express authorization of this Court and that copies should not be provided to the Defendant or left at the detention facility for his review.
>
> . . .
>
> IT IS FURTHER ORDERED that this protective order apply to any discoverable material provided to Brown's defense team except for Defendant's own statements.
>
> IT IS FURTHER ORDERED that all material disclosed pursuant to Title 18, United States Code, Section 3500 be returned by the defense or destroyed (including all copies thereof), at the close of trial or when any appeal has become final; that the defense be precluded from disseminating any 3500 material (and any copies thereof) to anyone beyond the Defendant, defense counsel, and any paralegals, investigators, or staff employed by the defense; and that the Defendant be precluded from taking any 3500 material (or copies thereof) with him to any jail facility, or possessing any 3500 material in any jail facility, either before, during, or after trial except when reviewing the material in the presence of defense counsel.[1]

In November of 2018 Brown was charged in twelve-count Superseding Indictment (Docket Entry No. 130) that included the seven charges in the original indictment and new charges for witness tampering, attempted obstruction, and solicitation to commit murder with intent to prevent the attendance and testimony at official proceeding, i.e., Brown's then up-coming trial.

[1]Protective Order, Docket Entry No. 106, p. 1. Page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system.

In October of 2023 a jury found Brown guilty of Counts 1 through 7 of the Superseding Indictment:[2] (1) conspiracy to commit the murder for hire of Celestine in violation of 18 U.S.C. § 1958; (2) aiding and abetting the intentional killing of Celestine while engaged in drug trafficking in violation of 21 U.S.C. § 848 and 18 U.S.C. § 2; (3) aiding and abetting the use, carrying, brandishing, and discharge of a firearm during and in relation to a crime of violence causing death by murder in violation of 18 U.S.C. § 924(c) and (j) and 18 U.S.C. § 2 (predicated on Count 1); (4) aiding and abetting the use, carrying, brandishing, and discharge of a firearm during and in relation to a crime of violence causing death by murder in violation of 18 U.S.C. § 924(c) and (j) and 18 U.S.C. § 2 (predicated on Count 2); (5) aiding and abetting the kidnapping of Williams in violation of 18 U.S.C. § 1201 and 18 U.S.C. § 2; (6) aiding and abetting the use, carrying, brandishing, and discharge of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2 (predicated on Count 5); and (7) conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1)-(b)(1)(A) and 846.

On March 8, 2024, the day of Brown's sentencing, the United States filed a motion to dismiss Counts 3 and 4 under Federal Rule

---

[2]See Superseding Indictment, Docket Entry No. 130, pp. 5-16, and Verdict Form, Docket Entry No. 354.

of Criminal Procedure 48(a) on double jeopardy grounds (Docket Entry No. 427). Defense counsel requested a continuance to file a response to the United States' motion, and leave to amend his previously filed Motion to Vacate (Docket Entry No. 404).[3] The court denied defense counsel's requests, granted the United States' Motion to Dismiss Counts 3 and 4, and sentenced Brown to four concurrent life sentences on Counts 1, 2, 5, and 7, to be followed to by a consecutive term of 120 months on Count 6.[4]

On appeal Brown argued that the "court erred in dismissing Counts [3] and [4], instead of the lesser-included offenses charged in Counts [1] and [2]." United States v . Brown, 151 F.4th 647, 663 (5th Cir. 2025). The Fifth Circuit held that the court erred by granting the United States' motion because the court failed to analyze which counts should be dismissed and, instead, "allowed the Government to dictate a choice that . . . should have been made by the court alone." Id. at 665. The Fifth Circuit held that the "court's failure to exercise its vested discretion necessitates remand," id., but "express[ed] no opinion on which counts the . . . court 'should' dismiss." Id. at 666. On November 21, 2025, the court entered a Memorandum Opinion and Order (Docket Entry No. 568) that inter alia granted Brown's motion to dismiss counts 1 and 2.

---

[3]Transcript of March 8, 2024, Sentencing Proceedings, Docket Entry No. 451, pp. 7:14-9:17.

[4]Id. at 9:18-10:20. See also Judgment in a Criminal Case, Docket Entry No. 432.

On December 16, 2025, the court resentenced Brown on Counts 5 and 7 to a term of life in prison, to run concurrently, and to be followed by twelve months as to each of Counts 3, 4, and 6, to run consecutively for a total of life plus 360 months.[5] At the resentencing hearing, defense counsel stated that Brown sought access to the discovery in his case file:

> Mr. Brown is requesting access to a copy of the discovery in this case so he can help prepare his habeas corpus petition that will be forthcoming. I don't believe he has a right to appointed counsel for that, from what I understand. So, the Court did enter a protective order I believe early in the case, that I believe is still pending, on not leaving the discovery in the jail. I spoke to Mr. Alexander about it. Our plan I guess was he was going to call the unit where Mr. Brown is to see how they store/handle it and would let him have access to it. He wouldn't have it himself is my understanding, but depending on what he finds out and then we discuss, we might approach the Court with an agreed order that may allow him access so that he can prepare his 2255. Because I have to deal with the State Bar rules which say if my client asks for his file I have to turn it over to him. I don't have a choice on that unless there's a court order, I believe is the answer, at least on my ethical rules.[6]

After confirming that defense counsel's file contained all of the discovery that Brown seeks,[7] and expressing concern "about the use of that material to threaten or intimidate or plan harm to

[5]See Minutes of Re-Sentencing, Docket Entry No. 571.

[6]Transcript of December 16, 2025, Sentencing, Docket Entry No. 585, p. 12:5-21.

[7]Id. at 12:23-25.

witnesses,"[8] the court directed defense counsel to file a motion outlining the applicable law governing Brown's request, including Texas Bar ethical rules.[9]

On January 1, 2026, Brown's counsel filed the pending Motion to Modify Protective Order. The discovery provided to defense counsel in this case that Brown seeks to access includes:

> (1) witness statements to state and federal authorities, of persons who both testified and did not testify at Mr. Brown's trial; (2) reports by state and federal authorities, by persons who both testified and did not testify at Mr. Brown's trial; (3) witness statements to the grand jury; (4) large volumes of records obtained from third parties by both the government and defense pursuant to subpoenas, such as airline flight records and phone provider records.[10]

## II. Analysis

"Brown . . . moves to modify the existing Protective Order (D.E. 106), to allow him access to his discovery under the rules for inmate access to discovery maintained by the B[ureau] O[f] P[risons] institution where he is housed."[11] Quoting Opinion 657 (2016) of the Texas Committee on Professional Ethics as stating

> [i]n general, the documents, papers and other information received from a client or received or generated in the

---

[8]Id. at 13:5-6.

[9]Id. at 13:7-9.

[10]Brown's Motion to Modify Protective Order, Docket Entry No. 575, p. 3 ¶ 6.

[11]Id. at 7 (Prayer).

> course of representing the client (including the lawyer's notes and work product) are the property of the client and must be transferred to a former client on request unless the lawyer is permitted by law to retain those documents,[12]

and citing 28 C.F.R. § 540.200(c) describing Communications Management Housing Units ("CMUs"), defense counsel states that

> Mr. Brown is expected to be housed, as occurred during his prior BOP housing assignment before resentencing, to a . . . CMU, which, pursuant to federal regulation, appears to ensure his communications are 'totally monitored . . . to <u>ensure</u> . . . protection of the public.[13]

The quoted regulation states that

> [t]he purpose of CMUs is to provide an inmate housing unit environment that enables staff to more effectively monitor communication between inmates in CMUs and persons in the community. The ability to monitor such communication is necessary to ensure the safety, security, and orderly operation of correctional facilities, and protection of the public. The volume, frequency, and methods of CMU inmate contact with persons in the community may be limited as necessary to achieve the goal of total monitoring, consistent with this subpart.

28 C.F.R. § 540.200(c).[14] Defense counsel argues that

> [t]his "total monitoring [of communications] . . . to ensure . . . protection of the public" would seem to be sufficient to address the Court's concerns about ensuring protection of the public, BOP's stated goals in the CMU regulation, while at the same time balancing Texas law seeming to require client access to his file, unless there is a Court order to the contrary.[15]

---

[12]<u>Id.</u> at 4 ¶ 8.

[13]<u>Id.</u> at 5 ¶ 10. <u>See also</u> <u>id.</u> n. 5 (stating that immediately before resentencing Brown was housed at FCI Cumberland, Maryland).

[14]<u>See also</u> <u>id.</u> at 5-6 ¶ 10.

[15]<u>Id.</u> at 5-6 ¶ 10.

Given the court's existing Protective Order, defense counsel seeks guidance about what portions, if any, of Brown's file he may disclose in response to Brown's request for access to the discovery in his case file.[16]

Asserting that the Protective Order remains needed,[17] the United States opposes Brown's motion to modify because there is no general constitutional right to discovery in a criminal case, because protective orders apply after sentencing and can be indefinite in cases such as this where witness intimidation and violence have already occurred, and because a defendant does not have a constitutional right to post-conviction discovery until he shows good cause why discovery should be granted.[18] The United States argues that

> Brown has engaged in an unrelenting pattern of attempts to kill and intimidate witnesses . . . He as given this Court no reason to modify the protective order.
>
> Defense counsel has not articulated a reason why defendant is requesting access to his file as maintained by counsel. Thus, neither this Court nor the government is able to properly evaluate this request.[19]

---

[16]Id. at 6 ¶ 11.

[17]United States' Response, Docket Entry No. 583, p. 1.

[18]Id. at 4.

[19]Id.

Acknowledging that following his resentencing, Brown was transferred back to FCI Cumberland, Maryland, the United States says that

> [p]rior to his transfer back to FCI Cumberland . . . [BOP] officials found legal paperwork, to include his PSR ["Presentence Report"], and a letter that Brown was attempting to hide in his legal paperwork. Brown was attempting to send the legal paperwork and the letter to . . . a friend and neighbor . . . The letter Brown was attempting to hide was written to . . . a drug associate . . . who is serving an 18-year federal sentence. . . . In the letter Brown tells . . . [the drug associate] that he has D[rug] E[nforcement] A[dministration] reports [on the associate] from the early 2000s . . . that he's been trying to find a way to give them [DEA Reports] to [the associate, and that members of his family have copies].[20]

The United States argues that these "incidents strongly suggest that Brown has obtained discovery materials in violation of the protective order and has passed those discovery materials to his family members for safekeeping and likely further distribution."[21]

While Brown replies that discovery he obtained and passed on to others was likely received and shared before the Protective Order was in place,[22] he does not address the United States' arguments that there exists an on-going need for the Protective Order and that legal materials including a copy of his PSR and a letter drafted to a drug associate were found in his possession prior to his transfer back to FCI Cumberland, Maryland.

---

[20]Id. at 2-3.

[21]Id. at 3.

[22]Brown's Reply, Docket Entry No. 587, pp. 1-2 ¶¶ 2-3.

Although at the resentencing defense counsel stated that Brown sought discovery materials to help prepare a petition for habeas corpus pursuant to 28 U.S.C. § 2255, in reply to the United States' opposition to his motion, defense counsel acknowledges that

> [Brown]'s case is still on direct appeal, his brief has not yet been filed, undersigned counsel remains appointed counsel for [Brown] on his appeal, and continues to operate under this Court's existing Protective Order (D.E. 106) in preparing the direct appeal, and any subsequent petition for certiorari. The direct appeal is of course limited to record claims under the ordinary appellate rules. Defense counsel is also cognizant that Rule 6(a), of Rules Governing § 225[5] Cases, provides: "A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." The Supreme Court has held that ordinarily a petitioner must show good cause for discovery under Rule 6(a), and good cause is shown "[w]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry. Bracy v. Gramley, 520 U.S. 899, 909 (1997) (citing Harris v. Nelson, 394 U.S. 286, 299 (1969)). Brown is not yet in habeas proceedings . . .[23]

Moreover, Brown does not offer any reason for seeking to modify the protective order. Brown's reply merely states that "Texas law does not appear to allow a lawyer to demand from the client any factual predicate before a lawyer must follow the Texas Disciplinary Rules of Professional Conduct regarding a client's right to his file."[24]

---

[23] Id. at 4 ¶ 8.

[24] Id. at 3 ¶ 7.

**A. Applicable Law**

"There is no general constitutional right to discovery in a criminal case." Weatherford v. Bursey, 97 S. Ct. 837, 846 (1977). See also United States v. Fischel, 686 F.2d 1082, 1091 (5th Cir. 1982) (same). Federal Rule of Criminal Procedure 16 provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). See also Alderman v. United States, 89 S. Ct. 961, 973 (1969) (citing Fed. R. Crim. P. 16) ("[T]he trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect."). The Fifth Circuit has not identified what constitutes "good cause" to modify a protective order entered in a criminal action, but in a similar situation has borrowed from the civil context. See United States v. Morales, 807 F.3d 717, 723 (5th Cir. 2015) (citing United States v. Swartz, 945 F. Supp. 2d 216, 219 (D. Mass. 2013)("[I]t is appropriate to analyze the 'good cause' requirement under the criminal rules in light of precedent analyzing protective orders entered in civil cases.")).

In Morales, the Fifth Circuit considered four factors before affirming the district court's denial of a criminal defendant's motion to modify a protective order made after the defendant had completed both his prison term and his term of supervised release:

"[(]1) the nature of the protective order[;] (2) the foreseeability, at the time of issuance of the order, of the modification requested[;] (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification." 807 F.3d at 723. A district court's decision regarding the availability of discovery is committed to the court's sound discretion, and is reviewed for abuse of discretion. Id. at 720. See also Clark v. Johnson, 202 F.3d 760, 765-66 (5th Cir.), cert. denied, 121 S. Ct. 84 (2000) ("The district court's decision regarding the availability of discovery is . . . committed to the sound discretion of the district court, and is reviewed under the abuse of discretion standard.").

**B. Application of the Law to the Facts**

1. The Nature of the Protective Order

The protective order covers all discovery except Brown's own statements, suggesting that it should be more easily modified than a more narrowly tailored protective order. Id. at 723. This factor weighs in favor of modification.

2. The Foreseeability, at the Time of Issuance of the Order

In Morales the Fifth Circuit stated that this factor is "a more apt consideration when the parties have negotiated a protective order." 807 F.3d at 723. Here, Brown acknowledges that

the Protective Order was negotiated early in the case,[25] "largely so that counsel could get access to unredacted copies and make sense of the discovery, and prepare a defense in what then was a death penalty-eligible prosecution."[26] Given the breadth of the Protective Order's reach to all discovery, it was foreseeable when the Protective Order was entered that modification might be desired, but defense counsel nevertheless agreed to the Protective Order's terms and thereby benefitted by receiving unredacted discovery and early access to material that otherwise would only have become available during trial under 18 U.S.C. § 3500.[27] Because Brown not only negotiated but also benefitted from the terms of the Protective Order, this factor weighs against modification.

3. The Parties' Reliance on the Protective Order

The United States's unopposed motion sought the Protective Order asserting that

> Brown poses a serious risk of future dangerousness. Brown has spent the majority of his life trafficking in narcotics and committing acts of violence. He was

---

[25]Brown's Motion to Modify Protective Order, Docket Entry No. 575, p. 2 ¶ 4; Brown's Reply, Docket Entry No. 587, p. 2 ¶ 2 ("The agreed Protective Order entered by the Court in May 2018 was negotiated between the parties.").

[26]Brown's Reply, Docket Entry No. 587, p. 2 ¶ 2.

[27]Brown's Motion to Modify Protective Order, Docket Entry No. 575, p. 3 ¶ 5.

> adjudicated responsible for his first murder committed when he was 15 years old, which he committed in furtherance of a drug trafficking enterprise. Since his parole for that crime, he has been engaged in the interstate trafficking of cocaine, and has been arrested multiple times for drug offenses and was convicted and sentenced to 30 years in State prison for using deadly violence against police officers.
>
> . . .
>
> Defendant has attempted to obstruct this investigation repeatedly, both before and after his incarceration. Brown has threatened to kill any cooperating witness and has expressed that intent to several of the government's witnesses before his incarceration. After his incarceration, Brown continued to find ways to threaten witnesses from his Segregated Housing Unit (the "SHU").[28]

The United States relied on the Protective Order to protect government witnesses while providing Brown's counsel access to unredacted discovery and early access to material otherwise discoverable only during trial.[29] Thus, this factor weighs against modification.

---

[28]Government's Unopposed Motion for Protective Order, Docket Entry No. 105, p. 2.

[29]See Brown's Motion to Modify Protective Order, Docket Entry No. 575, p. 2 ¶ 4 ("Counsel recalls negotiations surrounding the government's unopposed motion for protective order, and that defense counsel would not have attained early access to some government discovery absent agreement to the protective order, as 18 U.S.C. § 3500(a) itself does not require production in discovery of "any statement or report in the possession of the United States which was made by a government witness (other than the defendant) . . . until said witness has testified on direct examination in the trial of the case.").

4. Whether Good Cause Exists for the Modification

In Morales the Fifth Circuit explained that "[g]ood cause in this context includes 'changed circumstances or new situations, and the need to make information available for use in subsequent proceedings; it also factors in the other party's need for protection." 807 F.3d at 723-24 (quoting Peoples v. Aldine Independent School District, No. H-06-2818, 2008 WL 2571900. *3 (S.D. Tex. June 19, 2008)). Brown points to no changed circumstances, new situations, or need to make information available for use in subsequent proceedings. Although at Brown's resentencing hearing, defense counsel stated that Brown was seeking access to the discovery materials in his case file so he could help prepare a habeas corpus petition,[30] Brown's Motion to Modify Protective Order expresses no reason either for his request to access discovery materials in his attorney's case file, or for the pending motion to modify the Protective Order.

Even if Brown were seeking access to the discovery materials for purposes of filing a § 2255 petition, that would not establish good cause to modify the Protective Order. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 117 S. Ct. 1793, 1796-97 (1997). Once habeas proceedings have been

[30]Transcript of December 16, 2025, Sentencing, Docket Entry No. 585, p. 12:5-21.

initiated, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Rule 6(a), Rules Governing Section 2255 Proceedings for the United States District Courts. A habeas petitioner demonstrates "good cause" under Rule 6(a) "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracey, 117 S. Ct. at 1799 (quoting Harris v. Nelson, 89 S. Ct. 1082, 1091 (1969)). Rule 6 "does not authorize fishing expeditions." Ward v. Whitley, 21 F.3d 1355, 1367 (5th Cir. 1994), cert. denied, 115 S. Ct. 1257 (1995). Moreover, because "'there is no § 2255 petition pending in this case,' 'the provisions of Rule 6(a) are . . . inapplicable.'" United States v. Prather, No. 3:10-cr-218-D(01), 2016 WL 6893626, *2 (N.D. Tex. November 23, 2016). Thus, the good cause factor weighs against modification.

## IV. Conclusions and Order

For the reasons stated above the court concludes that three of the four factors courts in the Fifth Circuit consider when analyzing a motion to modify a protective order weigh against modification. Brown has therefore failed to demonstrate any cause — much less good cause — to modify the Protective Order entered on

May 25, 2018. Defendant Ronald Donnell Brown's Opposed Motion to Modify Protective Order and to Grant Client Access to His File, Docket Entry No. 575, is therefore **DENIED**.

Because the Protective Order requires copies of "discoverable material in connection with this case previously made available and to be made available in the future to Defendant Ronald D. Brown by the United States . . . not be provided to Defendant or left at the detention facility for his review,"[31] and because defense counsel remains bound by the Protective Order, defense counsel is hereby **ORDERED** not to provide to Brown discovery materials or copies thereof in his case file.

**SIGNED** at Houston, Texas, on this 28th day of August, 2026.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

[31] Protective Order, Docket Entry No. 106, p. 1.